JOSEPH W. McCAUSEY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

FRANK WOLF, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 11767, 24925.    Promulgated April 15, 1929.

*John A. Selby, Esq.*, for the petitioners.

*W. Frank Gibbs, Esq.*, and *Owen W. Swecker, Esq.*, for the respondent.

OPINION.

LITTLETON : The transaction as here involved may be briefly stated as follows: In 1919, 20 stockholders of the Commonwealth Savings Bank (two of whom are petitioners herein) formed a syndicate to acquire a controlling interest in the Federal State Bank, which it was proposed to merge with the former bank. In order to accomplish the foregoing purpose, the syndicate purchased 1,716 shares of stock of the Federal State Bank at a cost of $313,732.50, and borrowed money on notes signed by the syndicate members to make payment therefor. This represented an average cost per share of $182.83. The merger was then effected, in which stock of the new bank was issued to stockholders of the two old banks on share for share basis, the syndicate thus receiving 1,716 shares of this new stock. The syndicate then offered to sell this stock to other stockholders of the new bank, who were not members of the syndicate, at $110 per share, and of the stock so offered for sale, only 367 shares were purchased by these nonsyndicate members. The remainder of the stock was taken by the syndicate members on the basis of $110 per share. The amount thus shown as realized on the disposition of the stock was $188,760, or an amount of $124,972.50 less than the cost of the stock. Expenses incurred by the syndicate amounted to $1,931.32, which, when added to the foregoing amount of $124,972.50, makes a total of $126,903.82, and it is this last-named amount which the petitioners claim was a loss sustained by these syndicate members.

While the foregoing facts apparently form the basis on which petitioners might be claiming deductible losses, that is, a loss for each petitioner of his part of the foregoing amount of $126,903.82, we are not satisfied that the evidence before us—at least as to McCausey—goes even to that extent. In McCausey's stipulation as to the manner in which the amount claimed as a deduction was arrived at, we find these statements:

In the taxable year 1919 payment of Fifty Thousand Dollars ($50,000.00) was made on account of the liability incurred by the syndicate at the time of its purchase of shares of the Federal State Bank, of which amount the taxpayer paid Fifty Two Hundred Thirty Nine Dollars ($5239.00), inclusive of interest. In the taxable year 1920 he paid Twenty Seven Hundred Dollars ($2700.00) on the same liability.

In reporting taxable income for the years 1919 and 1920, the petitioner deducted amounts as foresaid representing his contributions to the reduction of syndicate liability.

From aught we know from the facts before us, what McCausey is saying is that a part of whatever payments he made on account of the liability incurred when the stock of the Federal State Bank was purchased should be allowed as a deduction. That is, the evidence does not go further in explanation of the liquidation of the original

liability than that these payments were made in the years on appeal and no information is furnished as to whether the amount realized on the sale of the stock to nonsyndicate members was used to reduce the original liability, or whether when the syndicate members took the stock on the basis of $110 per share an amount represented by ·such a price placed on the shares taken by the syndicate members was similarly used. Manifestly, without knowing more as to the nature of the payments made, we are in no position to say that the deductions claimed are allowable.

But even if the payments were only in liquidation of that which remained after reduction of the original liability by $188,760 (1,716 shares at $110 per share), are these payments deductible by the syndicate members? We think not. Apparently, the acquisition of the Federal State Bank stock, the effecting of the merger, and the disposition of the stock in the manner indicated in our findings was accomplished within a short period of time—at least within the year 1919. In the acquisition of the Federal State Bank stock and the exchange of this stock, through the merger, for the stock of the Commonwealth-Federal Savings Bank, no taxable gain or deductible loss resulted (section 202 (b) of the Revenue Act of 1918). As to the next step, namely, disposition of the stock by the syndicate, we can not agree that the loss claimed can be allowed on account thereof. In so far as the so-called purchases by syndicate members are concerned, we can see in this little more than a sale by the syndicate members to themselves. A syndicate is defined· in Bouvier's Law Dictionary, vol. 3, p. 3215, as "An association of individuals, formed for the purpose of conducting and carrying out some particular business transaction, ordinarily of a financial character, in which the members are mutually interested." After the stock of the new company had been received by the syndicate each syndicate member had an interest therein in proportion to his interest in the undertaking. Outside of the sales to the nonsyndicate members, all that the syndicate seems to have done was to divide the stock held by the syndicate among the syndicate members in proportion to their respective interests therein, assigning to such stock a price or value of $110 per share. The value of $110 was the price at which the stock was sold to nonsyndicate members, stockholders of the new bank, and indicates little as to the market value of the stock, such as we would have where there were sales as a result of a general offering to the public. It may well be that the stock received by the syndicate members had a value equal to or greater than the amount risked by the petitioners in the venture. This is not unreasonable, since the Federal State Bank stock acquired was that of a bank which the petitioners allege was in bad financial condition and it is only fair to

consider that what was sought to be accomplished was the creation of a stronger organization through the union of the two banks. When we consider the foregoing facts, particularly the relationship between the purchasers and sellers and evidence as to sale price, we fail to see where a deductible loss has been established. Cf. *Rose v. Trust Co. of Georgia*, 28 Fed. (2d) 767.

This leaves only the question whether a deductible loss was sustained on account of the sale to nonsyndicate members, and here ,if we would give to the transaction its most favorable view for the petitioners, namely, that it was an arm's-length transaction between the syndicate or syndicate members and the nonsyndicate members, in which stock which cost $182.83 was sold for $110 per share, we would still be unable to determine how much of the payments made were allowable deductions, for the reason that we were furnished no information as to the interests of the petitioners in the syndicate venture.

*Judgment will be entered for the respondent.*